JUDY BRADLEY PENLAND AND HUSBAND, BRUCE ELBERT PEN-
LAND v. RONNIE GREENE

No. 7428SC607

(Filed 18 December 1974)

1. Trial § 32— instructions to follow earlier instructions — no error

Trial court's instructions reminding the jurors of his earlier in-
structions to disregard stricken testimony and to follow those instruc-
tions were proper.

2. Automobiles § 90— entering highway from private road — instructions
proper

In an action to recover damages incurred by plaintiff in an auto-
mobile accident, the trial court's instructions occasionally using the
term "servient highway or street" instead of "private road or drive"
did not intermingle the law of G.S. 20-158 involving dominant-servient
highways and G.S. 20-156 involving the entry of an automobile from
a private drive or road into a public highway and thereby confuse
the jury.

Judge CAMPBELL dissenting.

APPEAL by defendant from *Friday, Judge,* 11 February
1974 Session of Superior Court held in BUNCOMBE County.

This is an action to recover damages incurred by plaintiff
in an automobile accident. Plaintiff, Judy Bradley Penland,
driver of an automobile owned by plaintiff, Bruce Elbert Pen-
land, was injured when she attempted to enter a public highway
from a private industrial entrance and her automobile collided
with an automobile driven by defendant. Plaintiff's automobile
was extensively damaged.

Defendant denied negligence and alleged that the negligence
of Mrs. Penland is a bar to any recovery.

The accident occurred near an intersection of a prominent
industrial road and North Carolina Highway 1112, also known
as Sand Hill Road. The industrial road is the entrance to and
exit from the American Enka Plant. The industrial entrance
runs north-south; Sand Hill Road runs east-west. Viewed from
the industrial entrance facing south, the area would be described
as follows.

Directly across Sand Hill Road from the industrial en-
trance, there is an Esso station. There is a traffic island in front
of the station, separating the station from the highway. Some

100 feet to 118 feet to the right of the entrance to the plant, in the westerly direction, there is a dyke. Further west on the other side of the dyke is a bridge. Also on the western side of the entrance, within a span of 100 feet to 150 feet there are six different highway signs. There are two speed limit signs, a caution sign to beware of an industrial entrance, a double caution light which runs 24 hours a day, and a sign which warns that a traffic officer will be ahead when the caution light on the sign is flashing. The highway is marked with a double yellow line to indicate a "no passing" zone and the speed limit in front of the entrance is 35 miles per hour. Sand Hill Road is 24 feet wide, each lane being 12 feet in width. Sand Hill Road runs through the dyke which is located on either side of the road. The highway curves between the industrial entrance and the dyke. Because of the way the highway curves between the industrial entrance and the dyke, as one pulls out on the highway, distance of visibility increases.

At about 7:05 to 7:15 on the morning of 27 July 1972, Mrs. Penland was leaving the American Enka Plant where she was employed. She drove up to the stop sign placed on the right side of the industrial entrance. She was facing a southerly direction and was preparing to exit from the plant and to proceed in an easterly direction on Sand Hill Road. She was driving a gold 1972 Datsun automobile. There is a considerable amount of exiting traffic at this hour, it being the end of the "graveyard" shift at the plant. Estimates range from several hundred to six hundred cars.

Mrs. Penland testified that she pulled up to the point of exit and observed five or six cars pass. She sat there three or four minutes. She looked in both directions before pulling out, saw no cars in sight, and then began to proceed to the eastbound lane on Sand Hill Road. As she moved towards the center of the road she continued to look to the west and still saw no car. As she began to straighten up her automobile in the eastbound lane she was hit by defendant's automobile, a blue 1967 Chevrolet. She testified that she was proceeding at about 15 miles per hour when hit, that she never saw defendant's automobile, and that she heard no warning before the impact. The left front of defendant's automobile crashed into the passenger side of plaintiff's automobile, caving in the right front door, tearing up the dash, and crashing the windows.

---

---

According to Mrs. Penland, when she pulled up to the entrance she was beside Clarence Grogan, who was in the neighboring lane preparing to turn into the westbound lane of the highway. She said Mr. Grogan pulled out into the westerly lane just before she pulled out. According to Grogan, he too waited for five or six cars to pass, and then seeing no oncoming traffic, pulled out. He indicated that he and Mrs. Penland entered the highway at about the same time.

Mr. Grogan further testified that he observed a blue Chevrolet as he passed through the dykes. He saw the car come across a bridge over Hominy Creek west of the dykes and observed the car some five or six seconds. It was the only blue Chevrolet he saw on the road. Mrs. Ivarine Trull, riding with Mr. Grogan, confirmed that they passed a blue Chevrolet and testified that upon approaching the Chevrolet, "Mr. Grogan pulled off the highway at the right side" and commented "wonder how far he is going to get at that rate of speed."

Ronald Revis, owner of the Esso station across from the industrial entrance, testified that he saw Mrs. Penland come up to the road and stop. She then pulled out in a normal fashion and was travelling at an average speed, about fifteen to twenty miles per hour. Revis then heard tires squalling and looked up. He saw defendant's blue Chevrolet coming through the dyke. Defendant was applying his brakes and sliding off the road towards the station. Defendant then released his brakes, jerked his automobile back on the road, and tried to get around plaintiff's automobile on the right side. In the process defendant hit plaintiff's automobile in the side of the right passenger's door just as plaintiff was straightening up in her lane. Defendant went up against the traffic island in front of the station. Plaintiff was pushed over some 20 to 30 feet, jumped the curb, and landed between a tree and a fence bordering the Enka plant.

According to Revis, plaintiff was more in the eastbound lane than in the westbound lane at the time of impact. Her back wheel and perhaps the back eighteen inches of her car were in the westbound lane. Revis estimated defendant's speed to be between 65 to 70 miles per hour. He observed that skid marks started at the dyke, stopped, then started again and continued to the point of impact.

Randy Vicks, who worked at the Esso station, witnessed the accident. Vicks testified that he saw plaintiff pull out of

the industrial entrance in a normal fashion, heard tires squalling, saw defendant's automobile sliding on the road, and saw defendant collide with plaintiff. The impact occurred near the easterly end of the traffic island located in front of the station. Plaintiff was in the right-hand lane and defendant was in the right-hand lane up against the curb of the traffic island. Vicks confirmed Revis' testimony that there were two sets of skid marks, one about 80-100 feet in length by the dyke and one 15-20 feet long at the point of impact. Vicks testified that plaintiff was going between ten and twenty miles per hour and defendant was going between 45 and 60 miles per hour. Vicks testified that the left front headlight of defendant's Chevrolet collided with the middle of the front right door of plaintiff's vehicle.

Defendant then presented the following evidence. Defendant was driving down Sand Hill Road to his work at the American Enka Plant at about 7:10 a.m. to 7:15 a.m. He travels the road frequently and is familiar with the area. On this particular day defendant was late for work, as he was scheduled to be at work at 7:00, but he was not in a hurry. He was driving about thirty to thirty-five miles per hour. He came through the dykes and was about sixty feet from plaintiff's automobile when he first saw it. When plaintiff pulled out, defendant first thought of turning off the road through the station but a man was standing in the way. Defendant "popped" his brakes in an attempt to stop. He was unsuccessful and hit plaintiff's passenger door. At the time of impact, the front of plaintiff's car was in the eastbound lane, with her side toward defendant's car. The rear portion of plaintiff's car was in the westbound lane. Defendant's left front fender hit plaintiff's right front door in front of the industrial entrance. Defendant estimated plaintiff's speed to be about ten miles per hour. He did not remember leaving skid marks or applying brakes near the dykes. He agreed that there are signals near the industrial entrance and specifically recalled the double flashing caution light and the "guard on duty" sign with a caution light near the dyke.

Issues of negligence, contributory negligence and damages were all answered in favor of plaintiffs. Defendant appeals from the judgment awarding damages for personal injuries and property damages.

*Cecil C. Jackson, Jr., for plaintiff appellees.*

*Morris, Golding, Blue & Phillips by James N. Golding for defendant appellant.*

VAUGHN, Judge.

Defendant brings forward numerous exceptions to the court's instructions to the jury.

[1]   We quote from defendant's brief:

> "During the Court's charge to the jury the Trial Court instructed the jury as follows (R p 107) :
>
> '(Now members of the jury, the Court will again instruct you that when it has instructed you to disregard testimony, disabuse it from your mind not to consider it. Please follow those instructions in your deliberations.)'
>
> In effect the Court advised the jury to disregard its former instructions not to consider certain evidence which it had stricken and instructed the jury not to consider."

On several occasions during the course of the trial, the judge had granted motions to strike certain testimony. On each occasion the jurors were instructed to disregard that testimony and not consider it in their deliberations. It is obvious to us, as it must have been to the jury, that in the quoted part of the instructions the judge was reminding the jurors of his earlier instructions to disregard the stricken testimony and to follow "those [earlier] instructions." The exception is without merit.

In assignments of error 17 and 18 defendant argues that the judge instructed the jury in such a fashion that it was possible for the jury to conclude that if defendant failed to keep a proper lookout or failed to keep his automobile under control he would be in violation of a statute, the violation of which would constitute negligence within itself. It is sufficient to say that we have carefully considered the charge in that respect and hold that it is not susceptible to the interpretation placed upon it by defendant.

[2]   Defendant argues that although the facts involve plaintiff's entry from a private driveway into a public highway "It is obvious that the Court instructed the jury of the law arising under G.S. 20-158 (dominant-servient highways) and intermingled and

thereby confused its instructions pertaining to the law set forth in G.S. 20-156, which involves the entry of an automobile from a private drive or road into a public highway."

A reading of the charge discloses that the judge, as he instructed the jury on the respective duties of the parties, on occasions used the term "servient highway or street" instead of "private road or drive" when he explained the law arising on the evidence as it related to the intersection of the road or drive leading from the Enka premises and North Carolina Highway 1112. Defendant contends that the judge thereby confused provisions of G.S. 20-158 and G.S. 20-156, thereby instructing the jury on law which did not arise from the evidence and giving conflicting instructions.

Defendant's argument is without merit. We note that the judge did not read from or refer to either G.S. 20-156 or G.S. 20-158, as such. Defendant does not point out any alleged errors the judge made in explaining the respective right and duties of the two drivers as they approached and entered the intersection. Other than the judge's occasional use of the term "servient highway or street" instead of "private road or drive," defendant does not indicate how he feels that the instructions given were erroneous or different from those which he thinks should have been given. That there was no error prejudicial to defendant in the occasional interchange of the term may be illustrated by the following quotation from the charge:

"Now the defendant further says and contends to you that at the time and place in question the plaintiff was negligent in that she violated the statute controlling a person entering a highway from a dominant highway—from a subservient highway. Members of the jury, and the Court instructs you in that regard that the Motor Vehicle Law of North Carolina provides that the driver of a vehicle entering a public highway from a private road or drive shall yield the right-of-way to all vehicles approaching on the public highway, the dominant highway.

In order to comply with this law the driver is required to look at vehicles approaching on the highway at the time when her lookout might be affected to see what she should see, to yield her right-of-way to vehicles on the highway and to delay her entry into the highway until it can be made in safety, and a violation of this law is negligence per se

or negligence within itself. A proximate cause would result in liability, members of the jury.

\*     \*     \*

. . . the Court instructs you that if you find by the greater weight of the evidence that the plaintiff, Judy Penland . . . violated the rule of starting from a stopped position on a subservient highway, or violated the rule upon entering a dominant highway from a private drive, as the Court instructed you, members of the jury, as you will recall the Court's instructions."

Even the Supreme Court has, on occasion, said that G.S. 20-158, which deals with the driving of one entering a main travelled highway from intersecting highways on which a stop sign has been erected, regulates the conduct of one entering the main highway from a private road. *Warren v. Lewis,* 273 N.C. 457, 461; 160 S.E. 2d 305, 307.

We have considered defendant's remaining assignments of error and hold that neither those, nor those discussed, disclose error prejudicial to defendant.

No error.

Judge BRITT concurs.

Judge CAMPBELL dissents.

Judge CAMPBELL dissenting:

I dissent and think a new trial should be given.